IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KATHLEEN RUTH CASTELLANOS, )<br>)<br>**Plaintiff,**            )<br>)<br>v.                                              )<br>)<br>KILOLO KIJAKAZI, Acting         )<br>Commissioner of Social Security, )<br>)<br>**Defendant.**            ) | Case No. CIV-22-814-AMG |

### MEMORANDUM OPINION AND ORDER

Kathleen Ruth Castellanos ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. (Doc. 1). The Commissioner answered the Complaint and filed the Administrative Record ("AR") (Docs. 12, 13), and the parties have fully briefed the issues. (Docs. 20, 26, 27).[1] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 18, 19). Based on the Court's review of the record and issues presented, the Court **AFFIRMS** the Commissioner's decision.

---

[1] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

I.     **The Disability Standard and Standard of Review**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment. 20 C.F.R. § 404.1521; *see id.* §§ 404.1502(a), 404.1513(a). A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment

or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[2] whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy.  20 C.F.R. § 404.1520(a)(4)(i)-(v). Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure.  *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).  If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of [claimant's] age, education, and work experience."  *Id*.  "The claimant is entitled to disability benefits only if [he or she] is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence."  *Noreja v. Comm'r, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted).  Substantial evidence is "more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S.Ct.

---

[2] RFC is "the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

1148, 1154 (2019) (internal quotation marks and citation omitted).  A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).  Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

**II.    Procedural History**

Plaintiff filed an application for DIB on February 4, 2020, alleging a disability onset date of January 1, 2019.  (AR, at 96-97).  The SSA denied the application initially and on reconsideration.  (*Id*. at 96-121).  Then an administrative hearing was held on January 19, 2022.  (*Id*. at 42-70).  Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled.  (*Id*. at 15-28).  The Appeals Council subsequently denied Plaintiff's request for review.  (*Id*. at 1-7).  Thus, the ALJ's decision became the final decision of the Commissioner.  *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

### III. The Administrative Decision

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged disability onset date of January 1, 2019, through her date last insured of September 30, 2020. (AR, at 19). At Step Two, the ALJ determined Plaintiff suffers from the severe impairments of obesity, rhomboid muscle strain, mild degenerative changes of the lumbar spine, diabetes, right knee osteoarthritis, major depressive disorder, and generalized anxiety disorder. (*Id.*) At Step Three, the ALJ found Plaintiff's impairments do not meet or medically equal any of the listed impairments. (*Id.*) The ALJ then determined that Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) except: she can stand and/or walk a total of six hours per eight-hour day and sit a total of about six hours per eight-hour day. She can understand, remember and carry out simple and routine tasks that may entail detailed but uninvolved instructions. She can make occasional judgement, where the job typically routine in nature [sic]. She can tolerate supervision that is simple, direct and concrete.

(*Id.* at 20). Then, at Step Four, the ALJ concluded that Plaintiff was able to perform her past relevant work as a "Housekeeping, Cleaner." (*Id.* at 23). Thus, the ALJ found that Plaintiff had not been under a disability at any time from the alleged onset date until the date last insured. (*Id.* at 24 ).

### IV. Claims Presented for Judicial Review

Plaintiff makes two claims, both related to the ALJ's formulation of the RFC. (Doc. 20, at 7-15). Specifically, she contends the ALJ: (1) "failed to properly develop the record and crafted an RFC out of whole cloth" and (2) did not properly analyze Plaintiff's subjective complaints. (*Id*. at 7, 12). In response, the Commissioner contends that the ALJ

properly analyzed Plaintiff's symptoms, and that the ALJ evaluated the whole record and properly assessed the RFC based on the evidence before him. (Doc. 26, at 5-16). The Court finds Plaintiff's contentions of error are without merit.

V.   **The ALJ Did Not Err in Formulating the RFC.**

   A.   **The ALJ's RFC Determination**

The ALJ discussed various pieces of evidence in support of her RFC determination. (AR, at 20-23). The ALJ considered Plaintiff's hearing testimony regarding her alleged symptoms and limitations. (*Id.* at 21, 23). The ALJ also summarized the medical record, including Plaintiff's complaints to her medical providers, examination notes, medications, and findings from x-rays of Plaintiff's right knee and lumbar spine. (*Id.* at 21-23). The ALJ addressed the findings of the state agency doctors, who noted Plaintiff failed to return forms and concluded they had insufficient evidence to evaluate Plaintiff's disability. (*Id.* at 16, 99, 105, 108-09). The ALJ considered a July 2019 medical opinion by Plaintiff's physical therapist and found it to be "based on the [Plaintiff's] subjective reporting of her own pain tolerance" and unpersuasive as "inconsistent with and unsupported by the overall medical evidence discussed above, including the routine medical imaging studies of the lumbar spine and right knee, routine examination findings, and conservative treatment for pain," and her "ongoing parttime employment as a janitor during the relevant period." (*Id.* at 23) (citing AR, at 374, 387, 397, 444).

The ALJ concluded:

> Based on the foregoing, I find the claimant has the above residual functional capacity assessment, which is supported by the overall medical evidence discussed above, including treatment notes, clinical findings, medical

imaging studies, and physical and mental status examinations, as well as [Plaintiff's] self-reported daily activities.

(*Id.*)

### B. The ALJ Properly Considered the Medical Record in Her Formulation of the RFC.

In support of her contention that the ALJ "crafted an RFC out of whole cloth," (Doc. 20, at 7), Plaintiff first argues that the RFC is not supported by substantial evidence because the ALJ failed to evaluate the persuasiveness of the insufficient evidence findings by the state agency physicians and rejected the only medical opinion in the record regarding her physical RFC, (*id*. at 9). As an initial matter, the Court agrees with the Commissioner's contention that "the regulations require an ALJ to evaluate the persuasiveness of prior administrative *medical* findings[,] . . . and a finding of insufficient evidence is not, by definition, a prior administrative *medical* finding that the ALJ was required to evaluate." (Doc. 26, at 6-7) (citing 20 C.F.R. §§ 404.1520c, 404.1513(5)). Moreover, the Tenth Circuit has rejected a plaintiff's argument that "components of an RFC assessment lack substantial evidentiary support unless they line up with an expert medical opinion," holding that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012); *see also Berumen v. Colvin*, 640 F. App'x 763, 765 (10th Cir. 2016) (rejecting the claimant's argument that "an ALJ may not make an RFC finding that differs from a physician's opinion unless the ALJ relies on a conflicting medical opinion"); *Meehan v. Kijakazi*, No. CIV-21-1191-AMG, 2023 WL 2169092, at *2-5 (W.D. Okla. Feb. 22, 2023); *Samantha W. v. Kijakazi*, 2022 WL 716149,

at *4 (D. Utah Mar. 10, 2022) ("[T]he absence of medical opinion evidence supporting some aspects of the RFC does not mean the ALJ "'crafted the RFC out of whole cloth.'").

In a similar vein, Plaintiff contends the ALJ was "not qualified to translate" the radiological evidence, laboratory evidence, and physical findings "into functional limitations." (Doc. 20, at 11). But "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). In support of her argument, Plaintiff cites *Hamlin v. Barnhart*, in which the Tenth Circuit held that "an ALJ is not free to substitute his own medical opinion for that of a disability claimant's treating doctors." 365 F.3d 1208, 1221 (10th Cir. 2004). But that is not what Plaintiff alleges – she does not, for example, assert the ALJ second-guessed a doctor's medical finding. Instead, she simply argues the ALJ was not permitted to interpret the medical evidence and formulate the RFC. That is incorrect. "[A]lthough an ALJ cannot make his/her own *medical diagnoses* from raw medical data in the record, an ALJ must be able to look at the *interpretations* of a plaintiff's raw medical data and determine limitations for a Plaintiff's RFC even if no medical professional offered any opinion as to what those RFC limitations should be." *Anthony G. v. Kijakazi*, 2022 WL 10052652, at *3 (D. Utah Oct. 17, 2022) (emphasis added). Here, the ALJ did not make any medical diagnoses or observations; rather, the diagnoses and observations contained in the medical record supported the ALJ's finding of particular severe impairments and related functional limitations. For instance, as the Commissioner pointed out, "the ALJ did not look at x-ray films herself and make assessments; instead the ALJ merely related word-for-word the mild findings that had already been interpreted by the radiologist." (Doc. 26, at 12).

8

Nor was the ALJ required to order a consultative examination to further develop the record. Plaintiff asserts the ALJ should have ordered the consultative examination because Plaintiff requested one and the state agency doctors found there was insufficient evidence to evaluate the claim. (Doc. 20, at 11). "[A]dministrative disability hearings are nonadversarial . . . and the ALJ has a duty to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Wall*, 561 F.3d at 1062 (internal quotation marks omitted). "The duty is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and [learns] the claimant's own version of those facts." *Henrie v. U.S. Dept. of Health & Human Services*, 13 F.3d 359, 361 (10th Cir. 1993) (internal quotation marks omitted). An ALJ "may purchase a consultative examination . . . when the evidence as a whole is insufficient to support a determination or decision on [a claimant's] claim." 20 C.F.R. § 404.1519a(b). An ALJ "has broad latitude in ordering consultative examinations." *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997). "But there is no need for a consultative examination when the ALJ has enough information to make a disability determination." *Jazvin v. Colvin*, 659 F. App'x 487, 489 (10th Cir. 2016) (citing *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008)).

The ALJ fully explained her response to Plaintiff's request for the consultative exam in her decision:

> [Plaintiff's] attorney requested a consultative examination during the hearing, but this request is denied. I am required to order medical examinations and tests only if the medical records presented do not give sufficient medical evidence to determine whether the claimant is disabled (20 C.F.R. 404.1519a(b)). Despite the insufficient evidence finding by the State agency consultants, this was based on [Plaintiff's] failure to return forms. In

9

fact, the contemporaneous medical evidence during the relevant periods, discussed in detail below, is sufficient to make a decision in this case.

(Doc. 21, at 16) (record citations omitted). Importantly, the ALJ noted that "an examination at this time will not show [Plaintiff's] condition and functioning prior to the date last insured, which [was] September 30, 2020, well over a year ago." (*Id*.) Thus, the Court finds the ALJ did not err by exercising her "broad latitude" in electing not to order a consultative examination. *Hawkins*, 113 F.3d at 1166.

The ALJ's opinion shows that she reviewed the record and found substantial evidence to determine severe impairments, formulate the RFC, and find Plaintiff was not disabled based on her ability to perform past relevant work. (AR, at 20-23). The ALJ appropriately carried out her charge of determining the RFC.

### C. The ALJ Did Not Err In Her Consideration Of Plaintiff's Subjective Complaints.

Plaintiff argues the ALJ erred in the consideration of her alleged symptoms. (Doc. 20, at 12-15). Plaintiff contends the ALJ's analysis was boilerplate and contains "no evaluation of subjective complaints, and is not even an evaluation of the evidence in general." (*Id*. at 14). The Court disagrees.

When evaluating a claimant's subjective symptoms, an ALJ must consider: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication, the claimant has received; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning functional limitations and

restrictions.  *See* Social Security Ruling ("SSR") 16-3p: <u>Titles II & XVI: Evaluation of Symptoms in Disability Claims</u>, 2017 WL 5180304, at *7-8 (S.S.A. Oct. 25, 2017).

The ALJ must determine whether the claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record." *See id.* at *7.  If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id*.  Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan*, 552 F.3d at 1190.  Provided the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (quotation marks omitted).  "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id*.  Furthermore, the ALJ is entitled to resolve evidentiary conflicts. *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016).

The ALJ accurately summarized Plaintiff's testimony in the decision by noting Plaintiff's report "that she was unable to work prior to the date insured due to burning pain in feet, worse with standing, diabetes, low back pain made worse by therapy, and right knee pain that could cause her to fall." (AR, at 21; 56-57).  After considering the evidence, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 21).

11

To support her finding, the ALJ reviewed Plaintiff's medical record and set forth specific evidence. She addressed Plaintiff's complaints to her doctors, physical examination findings (both normal and abnormal), diagnostic findings from x-rays, and non-opioid prescription medication used to manage her pain. (*Id.* at 21-23). The ALJ reasoned that "[t]he objective medical evidence shows that [Plaintiff's] chronic pain during the relevant period was less limiting than she alleged and did not preclude fulltime work," (*id*. at 21), and concluded that "[i]n limiting [Plaintiff] to light work, I have adequately accommodated [Plaintiff's] low back and right knee pain through the date last insured," (*id*. at 22). Likewise, she noted that the RFC adequately accommodates Plaintiff's diabetes, obesity, and psychological symptoms, and is consistent with Plaintiff's "extensive daily activities through the date last insured, including that she helped raise[] her four young grandchildren, cared for their daily needs and drove them places, did her own cleaning and laundry, [and] worked parttime as a janitor/housekeeper for a cleaning service . . . ." (*Id.* at 22-23).

By discussing Plaintiff's reports of pain and other symptoms, her daily activities, the effectiveness of her medications, and the type of treatment she received for her conditions, the ALJ considered the appropriate factors. *See* SSR 16-3p, 2017 WL 5180304, at *7-8. The ALJ explained why the record did not support Plaintiff's allegations of disabling symptoms and addressed the specific facts she considered in coming to such a conclusion and in arriving at the RFC. (AR, at 21-23). The Court finds the ALJ's symptom analysis was adequate and specific to Plaintiff, not boilerplate as Plaintiff contends.

Therefore, the Court finds the ALJ's assessment of Plaintiff's subjective complaints was supported by substantial evidence.

## VI. Conclusion

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned **AFFIRMS** the decision of the Commissioner.

**SO ORDERED** this 13th day of October, 2023.

AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE